**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 26-CV-20281-ELFENBEIN

**ADAM THOR**, *et al.*,

Plaintiffs,

v.

**FRONTIER AIRLINES, INC.**,

Defendant.
______________________________/

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendant Frontier Airlines, Inc.'s ("Defendant") Motion to Dismiss and Incorporated Memorandum of Law (the "Motion to Dismiss"). *See* ECF No. [6]. *Pro se* Plaintiffs Adam Thor ("Thor") and Travis Foster ("Foster" and collectively "Plaintiffs") filed a Response in Opposition, styled as a "Motion of Objection," ECF No. [7], and Defendant filed a Reply in Support of the Motion to Dismiss, ECF No. [9]. Plaintiffs thereafter filed a second Response addressing the Motion to Dismiss and Defendant's Reply. *See* ECF No. [12]. Defendant then filed a Motion to Strike Plaintiffs' Improper Sur-Reply (the "Motion to Strike"), ECF No. [17], to which Plaintiffs filed a Response in Opposition, ECF No. [19]. The Court has carefully reviewed the Complaint, the Motions, the Parties' submissions, the record, and the applicable law. For the reasons set forth below, Defendant's Motion to Strike, **ECF No. [17]**, is **GRANTED**, and Defendant's Motion to Dismiss, **ECF No. [6]**, is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

### A. Plaintiff's Allegations

This action arises from Plaintiffs' removal from an international Frontier Airlines flight scheduled to travel from Guatemala City, Guatemala, to Miami, Florida. *See* ECF No. [1-1] at 2–6. Plaintiffs allege that they purchased tickets from Defendant on November 2, 2023 for Frontier Flight 18 from Guatemala City to Miami. *Id.* at 3. According to the Complaint, the flight was initially scheduled to depart Guatemala City on January 11, 2024 at 1:57 p.m. and arrive in Miami at 5:34 p.m. *Id.* Plaintiffs allege that Defendant subsequently changed the scheduled departure time to 2:23 a.m. and the scheduled arrival time to 6:02 a.m. *Id.*

Plaintiffs boarded the flight in Guatemala City on January 11, 2024. *Id.* Foster initially sat in row 25 but moved to row 24 so that another passenger could sit beside his wife. *Id.* at 3. Plaintiffs conversed with nearby passengers, and Foster occasionally spoke with a flight attendant working near the rear of the aircraft. *Id.* As the aircraft taxied toward the runway, the flight attendant approached Thor and stated that his seatbelt was not fastened. *Id.* at 4. Plaintiffs allege that the exchange initially occurred in a joking manner. *Id.* Thor responded that he did not know how to fasten his seatbelt and needed assistance, but he then fastened the seatbelt himself. *Id.* Plaintiffs allege that the flight attendant looked at a religious necklace Thor was wearing, smirked, and walked away. *Id.*

Several minutes later, a lead flight attendant approached Plaintiffs and asked Foster whether Plaintiffs were "going to be a problem during the flight." *Id.* Foster questioned why the lead flight attendant had approached him, and Thor responded that Plaintiffs would not be a problem. *Id.* at 4. The lead flight attendant allegedly stated that she had been told that Plaintiffs

were bothering other passengers and refusing to fasten their seatbelts. *Id.* Plaintiffs denied those accusations. *Id.*

Plaintiffs allege that another flight attendant clarified that Thor — not Foster — had initially failed to fasten his seatbelt. *Id.* at 5. According to Plaintiffs, the lead flight attendant nevertheless continued directing the conversation toward Foster. *Id.* Thor accused the lead flight attendant of discrimination, and Foster questioned whether she was discriminating against him. *Id.* Foster allegedly stated that Plaintiffs would file a complaint with the airline if the conduct continued. *Id.* Plaintiffs allege that the lead flight attendant characterized Foster's statement as a threat and informed the captain. *Id.*

The aircraft then returned to the gate. *Id.* at 5. Frontier personnel and security officers boarded the aircraft and instructed Plaintiffs to exit. *Id.* Plaintiffs allege that they asked to speak with the pilot but were not permitted to do so. *Id.* at 5–6. Plaintiffs further allege that Frontier employees "assaulted" them while leaving the aircraft, but the Complaint does not suggest there was any physical contact or any physical injury. *Id.* at 6. After Plaintiffs deplaned, Frontier personnel questioned them for approximately two hours. *Id.* Plaintiffs allege they were initially told the aircraft would not leave until the issue was resolved, but the flight ultimately departed without them. *Id.*

A Frontier supervisor then rebooked Plaintiffs on the next Frontier flight from Guatemala City to Miami at no additional charge. *Id.* at 6–7. The replacement flight was scheduled to depart at 2:21 a.m. on January 12, 2024 and arrive in Miami at 6:02 a.m. *Id.* at 6. Plaintiffs allege that the supervisor assigned them seats in an emergency-exit row and stated that Plaintiffs were not a threat and should not have been removed from the earlier flight. *Id.* at 6. Plaintiffs boarded the

replacement flight and arrived in Miami at its scheduled time without further delay or incident. *Id.* at 7.

After arriving in Miami, Thor spoke with airport police and later submitted an online report concerning the incident. *Id.* Plaintiffs also contacted Frontier employees and Defendant's customer-service line in an effort to obtain the names of the flight attendants and other personnel involved in the incident, but Defendant allegedly declined to provide that information. *Id.*

**B. Plaintiffs' Claims and Requested Relief**

The Complaint asserts four claims arising from the changed flight schedule, Plaintiffs' interactions with the flight attendants, their removal from the aircraft, their questioning after they deplaned, and their resulting delayed arrival in Miami. *Id.* at 7–11. In Count I, Plaintiffs incorporate all the preceding allegations and assert a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.201, Florida Statutes. *Id.* at 7. Plaintiffs further allege that Defendant engaged in materially deceptive and misleading conduct and failed to disclose pertinent information to its passengers. *Id.* Plaintiffs claim losses consisting of "funds expended for tickets, unforeseen fees, embarrassment, and inconveniences," as well as "emotional distress, unfair treatment, denial of due process, lack of respect[,] and humiliation." *Id.* at 8. Within Count I, Plaintiffs also demand a list of all passengers, flight attendants, and ground crew. *Id.*

In Count II, Plaintiffs assert a Florida common-law claim for breach of contract. *Id.* at 8. Plaintiffs allege that Defendant represented that the flight would depart at a particular time, subsequently changed the scheduled flight time, and failed to provide Plaintiffs with other transportation options at no additional cost. *Id.* Plaintiffs again seek compensation for ticket expenses, unspecified fees, embarrassment, and inconvenience. *Id.* at 9.

In Count III, Plaintiffs incorporate all preceding allegations and assert a claim for fraudulent misrepresentation under Florida law. *Id.* at 9. Plaintiffs allege that Defendant made materially false representations and omissions while inducing them to purchase tickets and throughout the Parties' contractual relationship. *Id.* Plaintiffs further allege that the lead flight attendant lied to the pilot to have Plaintiffs removed from the aircraft and that another flight attendant participated in the alleged misrepresentations. *Id.* Plaintiffs claim emotional distress, unfair treatment, humiliation, and financial loss from the alleged fraud. *Id.* at 10.

In Count IV, Plaintiffs assert a claim for discrimination under unspecified Florida statutes. *Id.* at 10. Plaintiffs allege that Thor was discriminated against because of his religion and that Foster was discriminated against because of his race. *Id.* at 11.

Although the four enumerated counts arise under Florida statutory or common law, the Complaint contains several passing statements that Defendant violated the Montreal Convention. *Id.* at 3, 8–9, 11. The Complaint does not assert a separate cause of action under the Montreal Convention or identify the Convention provision under which Plaintiffs seek recovery, if any. *Id.* at 7–11. In their Prayer for Relief, Plaintiffs request a declaration that Defendant violated their rights through discrimination, unlawful detention, physical assault, and embarrassment. *Id.* at 11. Plaintiffs also request injunctive relief, reimbursement for ticket costs and fees, reimbursement for travel and lodging expenses, emotional-distress damages, statutory fines, attorney's fees and costs, and no less than $10 million in punitive damages. *Id.* at 11–12.

The Complaint does not allege that either Plaintiff suffered any identified wound, illness, impairment, or other bodily injury because of the incident. *See generally* ECF No. [1-1] at 2–12. Nor does the Complaint allege that either Plaintiff sought or received medical treatment. *See generally id.* Plaintiffs instead identify their personal injuries as embarrassment, inconvenience,

emotional distress, unfair treatment, denial of due process, lack of respect, humiliation, and emotional suffering. *See id.* at 7–11.

Although Plaintiffs generally request reimbursement for ticket costs, fees, and travel and lodging expenses, the Complaint does not identify any specific additional charge paid for their replacement transportation or any particular expense incurred because of the approximately one-day delay. *See id.* at 2–12. To the contrary, Plaintiffs allege that Defendant rebooked them on the next flight at no additional charge and that they arrived in Miami at the replacement flight's scheduled arrival time. *See id.* at 6–7.

**C. Procedural History**

This is Plaintiffs' second lawsuit against Defendant arising from the January 11, 2024 incident. *See* ECF Nos. [6] at 3–4; [6-2]. Plaintiffs filed their first action in Florida state court on July 24, 2024. *See* ECF No. [6-2]. Defendant removed that action to this District on October 1, 2024. *See id.* at 4; *see also Thor v. Frontier Airlines, Inc.*, Case No. 24-cv-23772-PCH, ECF No. [1]. Defendant moved to dismiss the first action on October 8, 2024, arguing, among other things, that the Montreal Convention exclusively governed Plaintiffs' claims. *See* ECF No. [6] at 4; Case No. 24-cv-23772-PCH, ECF No. [6]. Plaintiffs filed an objection that did not address Defendant's dismissal arguments, after which the Court afforded Plaintiffs an additional opportunity to respond. *See* ECF No. [6] at 4; Case No. 24-cv-23772-PCH, ECF No. [10]. Plaintiffs voluntarily dismissed the first action rather than file a further response. *See* ECF No. [6] at 4; Case No. 24-cv-23772-PCH, ECF No. [16].

On December 12, 2025, Plaintiffs commenced this lawsuit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See* ECF No. [1] at ¶2; ECF No. [1-1] at 1, 11. Defendant removed the action to this Court on January 15, 2026, invoking

diversity jurisdiction under 28 U.S.C. § 1332, *see* ECF No. [1] at ¶¶4–8, and thereafter filed the Motion to Dismiss, *see* ECF No. [6]. In the Motion to Dismiss, Defendant raises numerous grounds for dismissal, starting with its primary argument that the Montreal Convention preempts Plaintiffs' claims and that their claims do not satisfy the requirements of either Article 19 for delay damages or Article 17 for bodily injuries. *See* ECF No. [6] at 5-10. Defendant further contends that the Montreal Convention does not allow the recovery of punitive damages. *Id.* at 10-11. Defendant next raises several alternative arguments in the event the Court does not agree that the Montreal Convention preempts Plaintiffs' claims. *Id.* at 11-19. Specifically, Defendant argues that the Airline Deregulation Act preempts Plaintiffs' claims in Count I under FDUTPA, that Plaintiffs cannot sustain their breach-of-contract claim under the terms and conditions of the contract of carriage, that Plaintiffs fail to allege fraud with the particularity required by Federal Rule of Civil Procedure 9, and that Plaintiffs failed to exhaust their administrative remedies under the Florida Civil Rights Act. *Id.*

Plaintiffs thereafter filed their Response in Opposition in which they argue that discovery will produce video recordings, audio recordings, passenger information, and witness testimony supporting their version of the incident. *See* ECF No. [7] at 2. Plaintiffs also dispute Defendant's characterization of their interactions with the flight attendants and emphasize that Foster was not the passenger who initially failed to fasten his seatbelt. *See id.* at 2–4. Plaintiffs contend that Article 19 does not exempt an air carrier from liability when its employees discriminate against passengers or make false statements that cause a transportation delay. *See id.* at 4. Plaintiffs also assert that Foster's treatment constituted an Article 17 accident because he was targeted even though Thor was the passenger questioned about his seatbelt. *See id.* at 5. Finally, Plaintiffs state

that they filed a complaint with the Florida Commission on Human Relations regarding this incident, thereby exhausting their administrative remedies. *See id.*

In its Reply, Defendant argues that the alleged discriminatory reason for Plaintiffs' delay does not remove the claim from the scope of Article 19 under the Montreal Convention. *See* ECF No. [9] at 1–2. Defendant further contends that Plaintiffs do not allege recoverable economic damages under Article 19 or a bodily injury compensable under Article 17, requiring dismissal of all claims. *See id.* at 2–3.

On March 23, 2026, Plaintiffs filed a second response (the "Sur-Reply") without requesting or obtaining leave of Court. *See* ECF No. [12]. In the Sur-Reply Plaintiffs argue that the Montreal Convention's exclusivity extends no further than the Convention's substantive scope and that their claims arise from independent domestic-law obligations involving fair dealing, consumer protection, and discrimination. *See id.* at 2. Plaintiffs further argue that discovery is needed to determine whether Defendant's conduct, which occurred during international carriage, constituted an Article 17 accident, or otherwise fell within the Convention's defined liability provisions. *See id.* at 2–3. Defendant moved to strike the Sur-Reply as an unauthorized filing. *See* ECF No. [17] at 1–3. Plaintiffs oppose the Motion to Strike on the ground that they are proceeding without counsel and their submissions should be liberally construed. *See* ECF No. [19] at 1–2.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b), a party may move to dismiss a claim on several bases, including a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted, quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and footnote omitted). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration adopted, quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (alteration adopted, citation and quotation marks omitted).

"Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory

allegations, unwarranted deductions, or mere legal conclusions asserted by a party." *Campos v. INS*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998); *see also Ellen S. v. Fla. Bd. of Bar Exam'rs*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (noting that there "are a few exceptions to" the rule requiring courts to accept a complaint's allegations as true, "such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice"). When performing this analysis, the court may consider the complaint itself along with any "documents attached to" it "or incorporated in the complaint by reference." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014).

**B. The Montreal Convention**

The Convention for the Unification of Certain Rules for International Carriage by Air, commonly known as the Montreal Convention, is a treaty governing the rights and liabilities of carriers engaged in international air transportation. *See* Montreal Convention art. 1, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 350. The Montreal Convention replaced the Warsaw Convention and "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." *Id.* art. 1(1). The Convention defines "international carriage," in relevant part, as transportation in which "the place of departure and the place of destination" are situated within the territories of two States Parties. Montreal Convention art. 1(2).

Chapter III of the Convention establishes, *inter alia*, distinct liability provisions addressing passenger injury, baggage loss or damage, cargo loss or damage, and delay. *See* Montreal Convention arts. 17–19. Article 17 governs claims involving a passenger's death or bodily injury caused by an accident occurring onboard an aircraft or during embarking or disembarking. *See id.* art. 17(1). Article 19 governs damage caused by delay in the carriage of passengers, baggage, or cargo. *See id.* art. 19. Article 29, in turn, addresses the preemptive effect of any claims falling

within the Convention's scope and provides:

> In the carriage of passengers, baggage and cargo, any action for damages, *however founded*, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

Montreal Convention arts. 29 (emphasis added).

Article 29 establishes the Convention's exclusivity within its substantive field. *See id.* When the factual circumstances underlying a passenger's damages fall within one of the Convention's liability provisions, the passenger may recover only subject to the Convention's conditions and limitations. *See Pettaway v. Miami Air Int'l, Inc.*, 624 F. Supp. 3d 1268, 1275–76 (M.D. Fla. 2022). In *Tseng*, the Supreme Court interpreted the Warsaw Convention, the Montreal Convention's predecessor, and held that recovery for a personal injury suffered onboard an aircraft or during embarking or disembarking, "if not allowed under the Convention, is not available at all." *El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161 (1999). Article 29 of the Montreal Convention expressly incorporates this exclusivity principle by applying the Convention's conditions and limits to "any action for damages, however founded." Montreal Convention art. 29. Claims may fall within the Convention's substantive scope even if they are pleaded as other "causes of action for injuries." *Nobre v. Am. Airlines, Inc.*, No. 09-CV-61170, 2009 WL 5125976, at *2–4 (S.D. Fla. Dec. 21, 2009). Whether the Convention ultimately permits recovery is a separate question from whether the events fall within its substantive scope. *See id.*; *King v. Am. Airlines, Inc.*, 284 F.3d 352, 359 (2d Cir. 2002).

Article 17 provides that an air carrier is liable for "damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury

took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17(1). An Article 17 claim therefore requires: (1) an accident; (2) death or bodily injury caused by the accident; and (3) that the accident occurred onboard the aircraft or during embarking or disembarking. *See E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 535–36 (1991); *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1172 (11th Cir. 2014).

An "accident" is "an unexpected or unusual event or happening that is external to the passenger." *Air Fr. v. Saks*, 470 U.S. 392, 405 (1985). This definition is applied "flexibly" after assessing the circumstances surrounding the alleged injury. *Id.* If "some link" in the causal chain is an "unusual or unexpected" external event, the accident requirement may be satisfied. *Id.* at 406. By contrast, an injury resulting solely from the passenger's "own internal reaction" to the normal operation of the aircraft is not caused by an Article 17 accident. *Id.*

The accident requirement is separate from Article 17's bodily-injury requirement. *See Floyd*, 499 U.S. at 535–36, 552. Even when an accident has occurred, Article 17 does not authorize recovery for purely mental or emotional injuries unaccompanied by bodily injury. *Id.* at 552. Emotional damages are recoverable, if at all, only to the extent they are caused by a qualifying bodily injury. *See Diaz v. Miami Air Int'l, Inc.*, 757 F. Supp. 3d 1265, 1272 (M.D. Fla. 2024).

Article 19, on the other hand, provides that an air carrier is liable for "damage occasioned by delay in the carriage by air of passengers, baggage or cargo." Montreal Convention art. 19. A carrier may avoid liability by proving that it and its agents took all measures that "could reasonably" have been required to avoid the damage or that taking such measures was impossible. *Id.* An Article 19 plaintiff must allege legally cognizable damage caused by the delay. *See Campbell*, 760 F.3d at 1171. Dignitary harms arising from delay, such as inconvenience, are not independently recoverable under Article 19. *See id.*; *Daniel v. Virgin Atl. Airways Ltd.*, 59 F.

Supp. 2d 986, 994 (N.D. Cal. 1998). Courts distinguish a carrier's complete nonperformance from delayed performance. *See In re Nigerian Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 453–55 (E.D.N.Y. 2007). When a carrier ultimately transports the passenger to the contracted destination on a later flight, claims arising from the passenger's late arrival generally sound in delay and fall within Article 19. *Id.* Where a "plaintiff['s] state law claims are grounded in nonperformance, not delay within the substantive scope of Article 19," federal courts hold that "Article 19 does not preempt plaintiffs from pursuing those claims." *Id.* at 455.

## III. DISCUSSION

Defendant has moved to strike Plaintiffs' Sur-Reply, ECF No. [17], and to dismiss the Complaint, ECF No. [6]. The Court first addresses the procedural question of whether Plaintiffs' Sur-Reply should be stricken before turning to the substantive matters contained within the Motion to Dismiss.

### A. Plaintiffs' Second Response Is an Unauthorized Sur-Reply

By way of background, Plaintiffs filed their Response to the Motion to Dismiss on March 4, 2026. *See* ECF No. [7]. Defendant filed its Reply on March 11, 2026. *See* ECF No. [9]. Those submissions completed the briefing authorized by Local Rule 7.1(c)(1). Plaintiffs then filed another submission on March 23, 2026, titled "Motion of Objection to Defendants Motion to Dismiss in response to Plaintiffs prior motion." ECF No. [12] at 1. Despite its title, the filing directly responds to Defendant's Reply. *Id.* at 2–3. The filing is therefore a Sur-Reply.

Local Rule 7.1(c)(1) permits the movant to file a reply memorandum addressing matters raised in the response. *See* S.D. Fla. L.R. 7.1(c)(1). After the reply, "[n]o further or additional memoranda of law shall be filed and served without prior leave of Court." *Id.* A party wishing to file a sur-reply must therefore obtain permission before filing it. *See First Specialty Ins. Corp. v.*

*633 Partners, Ltd.*, 300 Fed. App'x 777, 788 (11th Cir. 2008). Sur-replies are generally disfavored and are ordinarily permitted only when a reply raises a new argument or new evidence to which the opposing party has not had a fair opportunity to respond. *See id.*; *see also Fedrick v. Mercedes-Benz USA, LLC,* 366 F. Supp. 2d 1190, 1997 (N.D. Ga. 2005).

Plaintiffs neither sought nor obtained leave of Court to file their Sur-Reply. *See generally* docket. Nor have Plaintiffs identified any new evidence or previously unraised argument in Defendant's Reply that required an additional response. *See* ECF No. [19] at 1–2. Instead, Plaintiffs ask the Court to excuse the unauthorized filing because they are self-represented and their submissions must be liberally construed. *Id.* The Court has liberally construed all of Plaintiffs' submissions. *See* ECF No. [20]. Plaintiffs received a full opportunity to oppose the Motion to Dismiss and filed a substantive Response addressing the Montreal Convention and Defendant's characterization of the incident. *See* ECF No. [7]. Their *pro se* status did not entitle them to file an additional memorandum after Defendant's Reply without first obtaining leave of Court. *See* S.D. Fla. L.R. 7.1(c)(1). Accordingly, Defendant's Motion to Strike, **ECF No. [17]**, is **GRANTED**, and Plaintiffs' unauthorized Sur-Reply, **ECF No. [12]**, is **STRICKEN**.

### B. The Montreal Convention Preempts Plaintiffs' Claims in Counts I, III, and IV

The Court next turns to address the substantive arguments raised within the Motion to Dismiss. Plaintiffs allege that Defendant sold them tickets for international carriage from Guatemala City, Guatemala, to Miami, Florida. *See* ECF No. [1-1] at 3. Their place of departure was therefore Guatemala, and their agreed destination was the United States. *See id.* Neither Party disputes that the United States and Guatemala are States Parties to the Convention or that the subject itinerary constituted international carriage within Article 1 of the Convention. *See* ECF No. [6] at 5–6; ECF No. [7] at 4–5.

Next, to determine whether Plaintiffs' claims alleged in the Complaint fall within the substantive scope of the Montreal Convention and are therefore preempted, the Court must identify the factual circumstances that allegedly produced Plaintiffs' damages. *See Tseng*, 525 U.S. at 171–72. If those circumstances fall within the scope of Articles 17 or 19, then Article 29 preempts Plaintiffs' claims based on domestic law and requires Plaintiffs to pursue their damages subject to the Convention's conditions, irrespective of how their claims are labeled. *See* Montreal Convention art. 29.

To recap, Article 17 provides that an air carrier is liable for "damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17(1). Article 19, on the other hand, provides that an air carrier is liable for "damage occasioned by delay in the carriage by air of passengers, baggage or cargo." Montreal Convention art. 19.

Turning to the claims in the Complaint, Counts I, III, and IV seek relief for injuries arising from the alleged conduct of Frontier employees onboard the aircraft and during Plaintiffs' removal from the flight. *See* ECF No. [1-1] at 3–11. Although Plaintiffs assign different domestic-law labels to those claims, each rests on the same essential allegations: Frontier employees discriminated against Plaintiffs, falsely accused them of misconduct, caused the aircraft to return to the gate, and removed Plaintiffs from the aircraft. *See id.* at 3–7.

In Count I, Plaintiffs assert that the above actions constituted a violation of FDUTPA by engaging in materially deceptive or misleading conduct. *See id.* at 7–8. Plaintiffs allege that Defendant's conduct caused ticket-related losses, unspecified fees, embarrassment, inconvenience, emotional distress, unfair treatment, lack of respect, and humiliation. *See id.* at 8. In Count III,

Plaintiffs allege that Defendant made materially false representations and omissions during the Parties' contractual relationship. *See id.* at 8–9. The specific misrepresentations identified in Count II are the lead flight attendant's alleged false statements to the captain and another flight attendant's alleged participation in those misrepresentations. *See id.* at 9. According to Plaintiffs, those statements caused the aircraft to return to the gate and resulted in their removal from the flight. *See id.* In Count IV, Plaintiffs allege that Thor was discriminated against because of his religion and that Foster was discriminated against because of his race. *See id.* at 10–11. That claim is likewise based on the conduct of the flight attendants onboard the aircraft and Plaintiffs' resulting removal. *See id.*

Thus, notwithstanding their different labels, Counts I, III, and IV seek personal injury damages arising from the same operative events — the alleged deceptive practices, fraudulent statements, and discrimination that allegedly occurred onboard the aircraft and culminated in Plaintiffs' compelled disembarkation. *See* ECF No. [1-1] at 3–11. Those claims therefore fall within Article 17's substantive scope. *See* Montreal Convention art. 17(1); *Nobre*, 2009 WL 5125976, at *2–4; *King*, 284 F.3d at 358–62. Plaintiffs cannot avoid Article 17's conditions by characterizing the alleged onboard conduct as a deceptive trade practice, fraudulent misrepresentation, or unlawful discrimination. *See Nobre*, 2009 WL 5125976, at *2. *Nobre* is particularly instructive. There, passengers asserted federal and state discrimination claims, along with state-law assault and battery claims, based on alleged racist and abusive conduct by airline employees during an international flight. *Id.* at *1–2. The court held that the claims fell within the Montreal Convention because the alleged events occurred onboard the aircraft during international carriage. *See id.* at *2–4. The plaintiffs there could not avoid the Convention by invoking federal civil-rights law or state intentional-tort law. *See id.*

Plaintiffs' allegations here are materially similar. Plaintiffs allege that Frontier employees discriminated against Thor because of his religion and Foster because of his race, falsely reported a threat to the captain, and caused Plaintiffs to be removed from an international flight. *See* ECF No. [1-1] at 3–5, 8–10. Those allegations may differ from *Nobre* in their details, but they concern the same substantive category of onboard personal-injury claims. Like the claims in *Nobre*, the Montreal Convention preempts Plaintiffs' state-law claims here, so their claims for personal injuries are subject to the limitations of Article 17.

Plaintiffs also incorporate into Counts I, III, and IV allegations in which they seek damages connected with their removal from the flight and their arrival in Miami later than initially planned. *See* ECF No. [1-1] at 2, 7–8, 10–11. Any claims embedded within Counts I, III, and IV based on the removal and late arrival to Miami fall within the scope of Article 19 because they concern damage allegedly caused by delay in international passenger transportation. *See* Montreal Convention art. 19.

Regardless of whether the claims fall within the scope of Article 17 or 19, Article 29 provides that, in the international carriage of passengers, "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise," may be brought only subject to the Convention's conditions and limits. Montreal Convention art. 29. The provision focuses on the factual circumstances giving rise to the alleged injury, not the particular cause of action selected by the plaintiff. *See Tseng*, 525 U.S. at 171–76. This conclusion reflects the Convention's exclusivity rule: when a passenger seeks damages for a personal injury arising onboard an aircraft or during embarking or disembarking, recovery is available only upon satisfying Article 17, regardless of the domestic-law invoked. *See Tseng*, 525 U.S. at 161, 175–76. Accordingly, the Convention preempts Plaintiffs' state law claims in Counts I, III, and IV and

provides the exclusive vehicle for recovering the damages Plaintiffs seek. The Court must next determine whether the Complaint plausibly alleges the conditions required by Articles 17 or 19 to state claims for relief.

**C. Plaintiffs Fail to State a Claim Under Article 17**

Starting with Plaintiffs' claims for personal injuries, the Court concludes that Plaintiffs cannot recover under Article 17 because the Complaint does not allege a bodily injury. As discussed above, Article 17 permits recovery only for death or bodily injury caused by an accident occurring onboard the aircraft or during embarking or disembarking. *See* Montreal Convention art. 17(1). When a personal-injury claim falls within Article 17's substantive scope but fails to satisfy a condition of liability, "recovery for a personal injury suffered 'on board an aircraft or in the course of any of the operations of embarking or disembarking,' if not allowed under the Convention, is not available at all." *Tseng*, 525 U.S. at 161.

1. *The Court Need Not Decide Whether an "Accident" Occurred*

Before addressing the bodily injury issue, the Court briefly addresses Defendant's argument that Plaintiffs' removal and rebooking were routine responses to a passenger-created disturbance and therefore were not unexpected or unusual events under *Saks*. *See* ECF No. [6] at 7–11. Defendant emphasizes that Thor initially failed to fasten his seatbelt and stated that he did not know how to do so. *See id.* at 9; *see* ECF No. [1-1] at 3. Defendant relies on *Campbell*, where the Eleventh Circuit concluded that the airline's bumping of a passenger was systematic, widely known, and therefore not an Article 17 accident. *See* ECF No. [6] at 9–10; *Campbell*, 760 F.3d at 1171–72.

Plaintiffs respond that Foster never refused to fasten his seatbelt and was nevertheless confronted and targeted by the lead flight attendant. *See* ECF No. [7] at 3–5. Plaintiffs further

allege that the lead flight attendant falsely accused them of threatening conduct, caused the aircraft to return to the gate, and arranged their removal because of their race or religion. *See* ECF No. [1-1] at 3–6.

*Campbell* involved the routine commercial practice of bumping or rescheduling a passenger. *See* 760 F.3d at 1171–72. Plaintiffs allege more than routine bumping; they allege an unexpected discriminatory confrontation, a false report to the captain, a return to the gate, and removal from the aircraft. *See* ECF No. [1-1] at 3–7. Because the Court must construe those well-pleaded allegations in Plaintiffs' favor at this stage, the Court does not rest dismissal on Defendant's contention that no Article 17 accident occurred. Even assuming that one or more events in the causal chain were unexpected or unusual and external to Plaintiffs, Article 17 additionally requires that the accident cause death or bodily injury. *See* Montreal Convention art. 17(1). As explained below, that independent requirement is dispositive of Plaintiffs' claims here.

2. *Plaintiffs Do Not Allege Bodily Injury*

Article 17 of the Convention requires the existence of a bodily injury caused by the accident. *See Campbell*, 760 F.3d at 1172; *Floyd*, 499 U.S. at 552 (interpreting Article 17 of the Warsaw Convention, the predecessor to the Montreal Convention, and concluding that "an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury."). Emotional harm damages, standing alone, are insufficient to state a claim under the Montreal Convention. *Jacob v. Korean Air Lines Co.*, 606 F. App'x 478, 481 (11th Cir. 2015) (holding that "the district court [did not] err in concluding that the Montreal Convention bars purely mental injuries."). Indeed, "[a]s a matter of law, under the Montreal Convention, damages for mental injuries that do not stem from bodily injuries are not recoverable." *Diaz,* 757 F. Supp. 3d at 1272; *Jacob*, 606 F. App'x at 481

("'[M]ental injuries are recoverable under Article 17 only to the extent that they have been caused by bodily injuries.'" (quoting *Ehrlich v. Am. Airlines, Inc.,* 360 F.3d 366, 400 (2d Cir. 2004)).

In the Complaint, Plaintiffs have identified no bodily injury whatsoever. The Complaint contains no allegation that either Thor or Foster suffered any wound, injury, physical impairment, or other physical harm. *See generally* ECF No. [1-1] at 2–11. Plaintiffs do not allege that they required medical assistance, received medical treatment, experienced physical symptoms, or sustained any identifiable injury to their bodies. *See generally id.* Instead, Plaintiffs allege that they suffered embarrassment, inconvenience, emotional distress, unfair treatment, denial of due process, lack of respect, humiliation, emotional suffering, and emotional harm. *See id.* at 7–12. Those alleged injuries are mental, emotional, or dignitary in nature. Such emotional harm damages, without more, are insufficient to recover under the Convention. *Floyd*, 499 U.S. at 552; *Jacob*, 606 F. App'x at 481. Plaintiffs can only recover for their purported emotional harm if they first sustained a bodily injury caused by the accident that, in turn, caused their emotional injuries. *Jacob*, 606 F. App'x at 481. Because Plaintiffs do not claim that they sustained any form of a bodily injury as a result of the accident, much less a bodily injury that caused their emotional harm, Plaintiffs have failed to state a claim under Article 17, even assuming the alleged conduct constituted an accident.[1]

[1] Plaintiffs argue that discovery will produce video recordings, audio recordings, passenger identities, and witness statements substantiating their version of the confrontation. *See* ECF No. [7] at 2–4. They also argue that discovery will expose inconsistencies in Defendant's description of which Plaintiff failed to fasten a seatbelt and why the lead flight attendant approached Foster. *See id.* Those matters concern whether the flight attendants acted properly and whether Plaintiffs' factual account is accurate. They do not address whether either Plaintiffs suffered a bodily injury. Plaintiffs do not suggest in their Response that the omitted evidence will show a bodily injury. *See generally id.* at 1–5. Rule 12(b)(6) requires the complaint itself to allege facts establishing each necessary component of a plausible claim. *See* Fed. R. Civ. P. 12(b)(6). Because bodily injury is an express condition of Article 17 liability and Plaintiffs allege none, discovery into whether the flight attendants discriminated against Plaintiffs or mischaracterized their behavior would not cure the legal deficiency.

**D. Plaintiffs Fail to State a Claim Under Article 19**

To the extent Counts I, III, and IV incorporate allegations that sound in delay damages and are preempted by the Montreal Convention, the Court likewise concludes that Plaintiffs fail to state a claim for such damages under Article 19. In the Complaint, Plaintiffs allege that, after they were removed from their flight, Defendant rebooked them on a flight departing approximately one day later. *See* ECF No. [1-1] at 4–7. Plaintiffs eventually traveled from Guatemala City to Miami on the replacement flight and arrived at its scheduled time. *See id.* According to Plaintiffs, Defendant arranged the next available Frontier flight, provided that transportation without an additional charge, and delivered Plaintiffs to the ticketed destination. *See id.* at 5–7.

Under Article 19, the passenger must allege actual, legally cognizable damage "caused by delay." *Campbell*, 760 F.3d at 1171. The allegations in the Complaint refer generally to inconvenience, emotional harm, embarrassment, ticket costs, and unforeseen fees. *See* ECF No. [1-1] at 7–11. Interpreting Article 19, courts have found that it only applies to "*economic* loss occasioned by delay in transportation" and that "[e]motional harms are not compensable under Article 19." *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 367–68 (E.D.N.Y. 2012) (emphasis in original) (collecting cases); *see also Daniel*, 59 F. Supp. 2d at 992 ("[T]his Court cannot logically find that damages for purely emotional injuries caused by delayed arrival are available under the Convention, when damages for purely emotional injuries caused by a near-crash into the ocean are not available."). Likewise, "[m]ere inconvenience does not support a claim under Article 19." *Id.; see also Lee v. Am. Airlines, Inc.*, No. CIV.A. 301CV1179P, 2002 WL 1461920, at *4 (N.D. Tex. July 2, 2002), *aff'd,* 355 F.3d 386 (5th Cir. 2004) ("[D]amages arising from this inconvenience are not easily quantifiable and do not result in real economic losses.").

Turning to Plaintiffs' claims for what can be liberally construed as economic damages, the Court finds that Plaintiffs' generalized references do not plausibly allege economic loss caused by the delay. First, Plaintiffs generally allege damages for ticket costs and unforeseen fees, but they affirmatively allege that Defendant rebooked them on the next flight at no additional charge. *See id.* at 7. Although "[c]ourts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, [they] need not accept factual claims that are internally inconsistent . . ." *Campos*, 32 F. Supp. 2d at 1343 (S.D. Fla. 1998); *see also Ellen S.*, 859 F. Supp. at 1492 (S.D. Fla. 1994) (noting that there "are a few exceptions to" the rule requiring courts to accept a complaint's allegations as true, "such as where the facts alleged are internally inconsistent"). Plaintiffs' general damages allegations regarding tickets prices and fees are internally inconsistent with their allegations that Defendant rebooked them on the next flight free of charge.

Similarly, Plaintiffs do not allege that they purchased replacement airfare from another carrier. *See generally id.* at 2–11. Instead, they allege that they accepted the replacement transportation Defendant provided and traveled to Miami on the next Frontier flight. *See id.* at 5–7. In the Prayer for Relief, Plaintiffs demand damages related to "all travel and lodging expenses incurred," but the Complaint is devoid of any allegations that Plaintiffs incurred any lodging, meal, ground-transportation, or other expense because of the delay. *See generally id.* at 2–11. To the extent Plaintiffs' claim for ticket costs in the Prayer for Relief consists of the original ticket price, that does not itself constitute damage caused by delay where Plaintiffs allege that Defendant ultimately provided the purchased transportation. Plaintiffs allege they traveled from Guatemala City to Miami on Defendant's replacement flight and arrived at the replacement flight's scheduled time. *See id.* at 5–7. Again, liberally construing Plaintiffs' *pro se* Complaint to determine whether

they state a claim under Article 19, the Court has also considered whether Plaintiffs assert any other economic damages caused by the alleged delay, but concludes that the Complaint is devoid of any allegations that they sustained other forms of economic damages, such as lost wages, a missed business opportunity, a forfeited reservation, loss of prepaid accommodations, or any other consequential economic loss caused by their delayed arrival in Miami. *See generally id.*

Likewise, Plaintiffs' Response does not identify any additional economic harm omitted from the Complaint. *See generally* ECF No. [7] at 1–5. Plaintiffs instead focus their argument on proving that the flight attendants acted discriminatorily and made false accusations. *See id.* at 2–6. Even if discovery substantiated those allegations, Plaintiffs cannot recover emotional harm damages under Article 19, and Plaintiffs have not alleged any economic damages required for an Article 19 claim.[2] Accordingly, Plaintiffs fail to state a claim under Article 19.

**E. Plaintiffs Cannot State a Claim for Breach of Contract in Count II**

Count II rests on conduct distinct from the onboard events underlying Counts I, III, and IV. In Count II, Plaintiffs allege that Defendant represented that the flight would depart at a specific time, changed the scheduled departure time after Plaintiffs purchased their tickets, and left Plaintiffs "stuck with that new time frame with no other options." ECF No. [1-1] at 8. Plaintiffs further allege that Defendant had a contractual obligation to provide other travel options at no additional cost but failed in its obligation to do so and breached the contract of carriage when it changed Plaintiffs' flight times after it received payment. *See id.* at 8–9. Regarding damages,

[2] Plaintiffs request punitive damages of no less than $10 million, statutory fines, and other relief intended to punish or deter Defendant. ECF No. [1-1] at 10–11. Article 29 expressly states that "punitive, exemplary or any other non-compensatory damages shall not be recoverable." Montreal Convention art. 29. Plaintiffs' demand for punitive damages and statutory penalties is therefore barred independently of the other pleading deficiencies. Even if Plaintiffs had stated a compensable claim under Article 17 or Article 19, Article 29 would prohibit the punitive and other noncompensatory damages requested.

Plaintiffs allege the schedule change caused them to sustain ticket-related losses, unspecified fees, embarrassment, and inconvenience.

Because Count II challenges Defendant's modification of the flight schedule, alleged failure to provide other contractually required flight options, and consequent alleged non-performance under the contract of carriage, liberally construing Plaintiffs' allegations, Count II does not squarely fall within the substantive scope of Article 19 and is, therefore, not preempted under Article 29.[3] *See In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d at 455 ("Because plaintiffs' state law claims are grounded in [contractual] nonperformance, not delay within the substantive scope of Article 19, the Court concludes that Article 19 does not preempt plaintiffs from pursuing those claims."). The Court therefore analyzes Count II under Florida contract law and the terms of the Parties' agreement.

Under Florida law, a breach-of-contract claim requires: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). When contractual language is unambiguous, its interpretation presents a question of law for the Court. *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014). A party does not breach a contract by engaging in conduct that the contract expressly authorizes. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1201 (S.D. Fla. 2022), *aff'd*, 76 F.4th 1335 (11th Cir. 2023).

The Complaint alleges the existence of a contract for air transportation and relies on that contract as the source of Defendant's alleged obligation to transport Plaintiffs at a specific time and to provide alternative travel arrangements. *See* ECF No. [1-1] at 6–9. Defendant attached the

[3] The Court recognizes that this is a close call because Plaintiffs' claims in Count II could arguably be interpreted as also sounding in delay. This *pro se* pleading is not a model of clarity, but it appears to the Court that the gravamen of Count II asserts a claim for contractual non-performance rather than delay.

governing contract of carriage to its Motion to Dismiss. *See* ECF No. [6-3]. The Court may consider the contract of carriage without converting the Motion to Dismiss into one for summary judgment because the Complaint refers to the Parties' contractual relationship, the document is central to Count II, and Plaintiffs do not dispute its authenticity. *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

The contract of carriage expressly provides that Frontier "will use reasonable efforts to transport passengers and baggage to the purchased destination," but that its "published schedules, flight times, aircraft types, seat assignments, and similar details set forth in the ticket or Frontier's published schedules are not guaranteed and form no part of this contract of carriage." ECF No. [6-3] at 19, § 17(A). The contract further reserves to Frontier the right to "change schedules" and alter other travel details in Frontier's operational discretion. *Id.*

Those unambiguous provisions defeat Plaintiffs' theory that Defendant breached the contract merely by changing the flight's scheduled departure and arrival times. The contract does not guarantee that a flight will depart at the time printed on a ticket or published in Defendant's schedule. *See* ECF No. [6-3] at 19, § 17(A). Indeed, it expressly provides that scheduled flight times form no part of the Parties' agreement. *See id.* Defendant's modification of a nonguaranteed flight time that does not form part of the contract of carriage between the parties cannot constitute a violation of any contractual obligation owed to Plaintiffs. Count II therefore fails to state a claim for breach of contract.

**F. Dismissal With or Without Prejudice?**

The Court must next consider whether dismissal of Plaintiffs' claims in the Complaint is with or without prejudice, and the answer to that is: it depends on the claim. Defendant argues that amendment under Articles 17 or 19 of the Convention would be futile because Plaintiffs

cannot state a claim for relief so dismissal should be with prejudice. Because the Court has determined that the Montreal Convention preempts the claims in Counts I, III, and IV and Plaintiffs cannot recast their claims under another Florida statute or common-law theory because Article 29 would continue to preempt their claims arising from same underlying events and damages, the Court must determine whether Plaintiffs can amend their pleading to state viable claims for relief under Article 17 for their personal injuries and under Article 19 for their delay damages.

"Generally, '[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quoting *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991) (modification in original)). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). The Court's analysis here focuses on the latter issue — whether amendment of Plaintiffs' claims would be futile.

The Court starts with whether Plaintiffs can state a viable claim for personal injuries under Article 17 of the Montreal Convention and the Court concludes that they cannot. Plaintiffs' inability to state an Article 17 claim does not arise from a technical pleading defect or their failure to identify the correct legal label. Their detailed factual narrative describes the entire incident from ticket purchase through arrival in Miami and identifies no bodily injury or even an event that could be construed as causing a bodily injury. *See* ECF No. [1-1] at 2–11. Although the Complaint contains a passing reference that Plaintiffs were "both assaulted" by Defendant's employees during their removal from the aircraft, the intentional tort of assault, unlike a battery, does not involve a

physical touching. Rather, "[a]ssault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *Lay v. Kremer*, 411 So. 2d 1347, 1349 (Fla. 1st DCA. 1982). Their Response likewise identifies no physical injury nor does it suggest that a touching or other event that could have caused a bodily injury took place and instead focuses on evidence they believe will prove discrimination and false accusations. *See* ECF No. [7] at 2–5. Because Plaintiffs' personal injury claims are limited to emotional harm damages, which standing alone are not recoverable under Article 17, there is no amendment here that could possibly state a viable claim for personal injuries under the Convention, requiring dismissal with prejudice.

Plaintiffs' delay damage claim under Article 19 present a different situation. Although the Complaint contains some internal inconsistencies as to whether Plaintiffs incurred certain damages such as a rebooking fee or whether Plaintiffs are seeking damages for the cost of the ticket on which Frontier ultimately transported them from Guatemala City to Miami, the Prayer for Relief suggests that Plaintiffs may have sustained other potentially recoverable delay damages, such as expenses for travel and lodging. Indeed, if Plaintiffs' ultimate return flight to Miami was not until the following day, it would be logical for Plaintiffs to have sustained some delay damages for a hotel, meals, and other potential incidental expenses from an unexpected overnight stay. For that reason, the Court will give Plaintiffs the opportunity to amend to clearly allege their claims for delay damages under Article 19 and clearly articulate whether they sustained any economic damages caused by their delayed travel from Guatemala City to Miami. However, as the Court already noted above, Plaintiffs' claims for emotional harm are not recoverable under Article 19 of the Convention. Similarly, Plaintiffs' claims for punitive damages are not recoverable under

Article 29. Thus, Plaintiffs' Amended Complaint for delay damages under Article 19 should be limited only to recoverable economic damages.[4]

Turning finally to Count II for breach of contract, the Court has determined that Plaintiffs' claims sound in nonperformance, not in delay, so they are not governed by the Montreal Convention. Nonetheless, the terms of the contract of carriage are dispositive because they specify that the flight times on the ticket are not guaranteed and do not form part of the contract. As a result, Plaintiffs' breach-of-contract claim in Count II, which alleges that Defendant's unilateral modification of the flight times without giving Plaintiffs' alternative flight options breached the contract, is premised upon contractual terms that are not part of the contract of carriage. Plaintiffs cannot sue Defendant for a breach of a contractual provision that was not part of the bargain in the first place. Consequently, any amendment to Count II, which is premised on a non-existent contractual term, would be futile, requiring dismissal of Count II with prejudice.[5]

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Strike Plaintiffs' Improper Sur-Reply, **ECF No. [17]**, is **GRANTED**.

---

[4] The Court notes that Plaintiffs had notice of Defendant's Montreal Convention arguments before filing this action. Defendant raised the preemptive effect of the Convention in its motion to dismiss Plaintiffs' prior lawsuit, and Plaintiffs voluntarily dismissed that action after receiving an additional opportunity to respond to the motion. *See Thor v. Frontier Airlines, Inc.*, Case No. 24-cv-23772-PCH. Defendants have asked the Court to take judicial notice of this prior lawsuit and its filings. Although Plaintiffs filed the present, substantially similar Complaint in this lawsuit after having notice of Defendant's dismissal arguments, Plaintiffs were not required to accept Defendant's arguments in the original motion to dismiss as true or as an accurate recitation of the law. *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Given that there was no ruling on the motion to dismiss in the prior lawsuit, this is the first time that Plaintiffs have been made aware that their state-law claims are preempted and that their Complaint fails to state a claim for relief.

[5] In light of the Montreal's preemptive effect on Counts I, III, and IV, and Plaintiffs' inability to state a claim for breach of contract in Count II, the Court does not reach Defendant's remaining alternative arguments raised in the Motion to Dismiss, ECF No. [6].

2. Plaintiffs' unauthorized Sur-Reply, **ECF No. [12]**, is **STRICKEN**.

3. Defendant's Motion to Dismiss, **ECF No. [6]**, is **GRANTED IN PART and DENIED IN PART**. The Montreal Convention preempts Counts I, III, and IV and Count II fails to state a claim for breach of contract. Plaintiffs' Complaint, **ECF No. [1-1]**, is therefore **DISMISSED** consistent with this opinion. Plaintiff may file an Amended Complaint asserting a claim for recoverable economic delay damages under Article 19 of the Montreal Convention, consistent with this opinion, **no later than October 15, 2026**.

**DONE and ORDERED** in Chambers in Miami, Florida on September 28, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record

Adam Thor
1300 Washington Ave, Unit 0264
Miami Beach, FL 33119
201-638-1077
Email: jbstuna@yahoo.com
PRO SE

Travis Foster
1300 Washington Ave, Unit 0264
Miami Beach, FL 33119
201-638-1077
Email: jbstuna@yahoo.com
PRO SE